

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-11-2006

# Format Corp v. Widewaters Prop Dev

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1048

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Format Corp v. Widewaters Prop Dev" (2006). *2006 Decisions*. Paper 1762.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1762

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-1048
_____

FORMAT CORPORATION

v.

WIDEWATERS PROPERTY DEVELOPMENT
CORPORATION, INC.,

Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 02-cv-01902)
District Judge:  The Honorable Gary L. Lancaster
_____

ARGUED OCTOBER 19, 2005

BEFORE: SMITH, STAPLETON, and NYGAARD, <u>Circuit</u> <u>Judges</u>.

(Filed January 11, 2006)
_____

John M. McIntyre, Esq. (ARGUED)
Reed Smith
435 Sixth Avenue
Pittsburgh, PA 15219

<u>Counsel for Appellant</u>

William P. Carlucci, Esq. (ARGUED)
Fisher, Rice, Barlett, Elion & Wayne
125 East Third Street
Williamsport, PA 17701

Counsel for Appellee

_____

OPINION OF THE COURT

_____

NYGAARD, <u>Circuit</u> <u>Judge</u>.

This is a contract dispute, specifically about the application of a liquidated damages clause. The dispute arose out of a real estate deal that allowed appellant Widewaters Property Development Corporation to hold open for a specific amount of time the option to purchase land owned by appellee Format Corporation. The contract contained a liquidated damages clause and the dispute revolves around the interpretation of this clause. Format claims, and the District Court agreed, that the liquidated damages clause is ambiguous and that the term "paid" must mean fees due and owing, in order to prevent an absurd and unreasonable result. Widewaters opposes this construction and argues that the parties should be bound by the literal interpretation of the clause, which, it argues, means that Format is due only fees actually paid, not fees due and owing. The District Court ruled in favor of Format and awarded Format the total amount it was owed, applying an admittedly nonliteral interpretation of the liquidated damages clause.

2

Widewaters appeals from that decision.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

## I.

The facts are quite extensive, and we summarize only those relevant to our decision.  Format and Widewaters entered into a contract on November 30, 1999 entitled "Real Estate Purchase and Sale Agreement."  The agreement provided that Format would sell a 123 acre parcel of land in Pennsylvania to Widewaters for $4,081,023.  The agreement contained an express liquidated damages clause that provided for Format's recovery in the event of a default by Widewaters.[1]

The final agreement was a form contract drafted by the general counsel of Widewaters.  However, several drafts of the contract were exchanged over a seven month negotiation and drafting period during which  Format made changes to the contract.  Both parties are sophisticated businesses that deal regularly with real estate development.

The agreement gave Widewaters six months from the date the contract was signed to evaluate the feasibility of developing the property.  During this six month period, identified as the "Initial Period," Widewaters did not have to make any payments.  Then,

---

1.	The liquidated damages clause  stated, in relevant part:

> [i]f Buyer willfully fails to render the performance required of it under this Agreement, beyond any applicable notice and cure periods, then Seller shall, as its sole and exclusive right and remedy, be entitled to the Initial Deposit and any Extension Fees and other sums, if any, paid to Seller pursuant to this Agreement, as liquidated damages and not as a penalty and neither party shall have any further obligations or liabilities to the other.

3

under the agreement Widewaters could purchase additional six month extensions of time in order to continue to evaluate the economic and practical feasibility of developing the property. Each of these six month extensions required payment of a certain amount at certain times. For instance, the first extension of time following the Initial Period (denoted as the First Extension Period) could be purchased by Widewaters by releasing its $35,000 deposit from escrow and notifying Format whereas the second extension could be obtained by making monthly payments of $12,000 for the six month period.

Widewaters released the $35,000 from escrow to purchase the First Extension Period and duly notified Format. Then, on November 28, 2000, Widewaters sent Format a check for $12,000 for the "monthly extension fee for December, 2000" signaling that it was going to purchase the Second Extension Period. However, from January 2001 through May 2001, Widewaters made no further payments for the second extension.

A Third Extension Period was also available beginning on June 1, 2001 and running until November 30, 2001 and, on May 30, 2001, Widewaters sent a $15,000 check to plaintiff for the "monthly extension fee for June, 2001" signaling, again, that it intended to purchase the third extension. However, after making the first two monthly payments, Widewaters made no further payments for this extension period.

By May 17, 2002, Widewaters had paid a total of $77,000 to Format but had outstanding extension fee payments totaling $156,000 due to its failure to pay five months of the Second Extension Period and four months of the Third Extension period. Format demanded payment of the outstanding balances three times, first on July 10, 2001, then on

4

February 28, 2002, and then finally again on May 17, 2002 when it also notified Widewaters that it was terminating the contract because Widewaters had failed to pay the extension fees.

According to the District Court, the only reason Widewaters was not paying the fees was because the project had become too expensive due to a right of way running through the property and the presence of wetlands on the property. Widewaters wanted to secure a reduction in the purchase price and, in an effort to do so, was withholding the extension fees.

## II.

Our review of the District Court's interpretation of a contract is plenary. We review the District Court's conclusions of law *de novo*. *Ram Const. Co., Inc. v. American States Ins. Co.*, 749 F.2d 1049 (3d Cir. 1984) and the District Court's findings of fact under the clearly erroneous standard. *See id.*; F.R.Civ.P.52(a).

## III.

It is well settled that commercial parties are free to contract as they see fit and that generally, absent fraud, illegality, unconscionability or mistake, parties are bound by the terms of their contract. *See Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1009 (3d Cir. 1980). This is especially so where the parties, as here, are sophisticated businesses and regularly engage in these types of deals. *See Brokers Title Co. Inc. v. St. Paul Fire & Marine Ins.*, 610 F.2d 1174, 1180-81 (3d Cir. 1979). It is equally true that in construing a contract, the paramount consideration is the intent of the parties, which, in

5

a written contract, is contained in the writing itself. *See Mellon Bank*, 619 F.2d at 1009;

*Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 92 (3d Cir. 2001).

Moreover, where the language is clear and unambiguous, the express (and therefore

literal) terms of the contract will control. *See Bohler-Uddeholm*, 247 F.3d at 92-93. If,

however, a term is ambiguous and thereby susceptible to more than one interpretation, a

court may look outside the "four corners" of the contract to determine the intent of the

parties. *Id*. at 93. Moreover, in certain situations, a term may be facially unambiguous

(literally not susceptible to more than one interpretation) and yet still be found to be

ambiguous. Thus, "if the plain meaning of a contract term would lead to an interpretation

that is absurd *and* unreasonable," a court may construe the contract otherwise in order to

reach a more sensible and reasonable result. *Id*. at 96 (emphasis added).

Widewaters argues, and we agree, that "the District Court disregarded what it

conceded was a 'literal reading' of the Liquidated Damages Provision in this case and

impermissibly revised the bargained for exchange agreed to between Widewaters and

Format." The District Court admitted that a literal interpretation supported Widewaters'

claim that the term "paid," as used in the liquidated damages clause, meant only money

actually paid to Format.[2] However, it then determined that the "literal reading of

paragraph 8, the liquidated damages clause, would lead to an absurd result in that

---

2.      Specifically, the District Court noted that "a literal reading of that
provision...limits recover [sic] to "fees paid.""

defendant could refuse payment of all fees due, then unilaterally breach the contract and claim plaintiff should receive nothing." We think this was legal error.

According to the rule established in *Bohler-Uddeholm*, a court may only construe a facially unambiguous term to be something other than its plain meaning when the plain meaning would lead to "an absurd *and* unreasonable result." *See id.* (emphasis added). We note that this rule must be read conjunctively, requiring that the actual result be both absurd and unreasonable. The District Court's finding that the result was only absurd, therefore, is not enough to render the facially unambiguous term ambiguous and therefore susceptible to a different interpretation other than its plain meaning.

Additionally, we believe that the District Court's conclusion that the plain meaning of the term would lead to an absurd result because it *could* lead to a situation where Widewaters could refuse payment of all fees and then unilaterally breach the contract is unpersuasive. We need not determine whether, had this actually happened, it would have been absurd since, here, it did not. Instead, Format received $77,000 in payment from Widewaters and decided not to terminate the contract when it failed to receive the rest. This result, under any plain understanding of the word, cannot be said to be "absurd." Indeed, we note that the District Court did not determine that the actual result was absurd, only that some hypothetically possible result would have been absurd.

We do not read *Bohler-Uddeholm,* or the Pennsylvania contract cases on which it is based, to support the contention that a facially unambiguous term becomes ambiguous if there is *any* possibly absurd result that might hypothetically occur. Rather, we

7

understand the inquiry to be whether applying the facially unambiguous plain meaning of the term would lead to an absurd result. Here, it certainly would not. The District Court, therefore, erroneously found the liquidated damages clause to be absurd and, hence, ambiguous.

The liquidated damages clause here was both facially unambiguous - clearly limiting Format's recovery to the deposit plus any fees already paid, and reasonable - the clause allowed Format to terminate the contract at any point if Widewaters stopped paying its fees and walk away while still recovering the fair value of the deal. That Format held the deal open despite not receiving the payments was, of course, Format's choice, as there existed no automatic breach trigger for nonpayment of fees; but Format did so at the risk of not recovering those fees not actually paid to it. Where the clause was a product of seven months of negotiation between two very sophisticated business and real estate entities, the fact that one party now no longer wants to be bound by it does not render the clause unreasonable.

Because the facially unambiguous term of the liquidated damages clause did not lead to an absurd and unreasonable result, the District Court erred in applying an alternative interpretation. Accordingly, we reverse the District Court's opinion and remand for further proceedings in accordance with this opinion.

STAPLETON, Circuit Judge, concurring:

I agree with my colleagues that the judgment of the District Court must be reversed. I reach this conclusion by a somewhat different route, however.

Format and Widewaters were sophisticated business entities who negotiated an option contract. Under the terms of the contract when read literally, Format was buying an option to purchase the property for $4,081,023 in the event it satisfied itself, in its sole discretion, that the property was suitable for development. Contract, Section 7, Appendix 44. It was never obligated to purchase the property, and at any point in time it could walk away without paying more than it had already paid for its option. But this was not unfair, unreasonable or absurd because Widewaters could terminate the option without adverse consequence to itself if Format ever ceased to pay what was required to keep the option alive. Under Section 8 of the contract, if Format ceased paying extension fees beyond any applicable notice and cure period, Widewaters was entitled to walk away with everything it had received "and neither party [would] have any further obligation or liability to the other." Widewaters chose not to avail itself of this option in January, 2001, and monthly thereafter, but it had a right each month to terminate Format's option and sell the property to a third party.

Finding no unreasonableness or absurdity in the contract, I would remand and direct the District Court to enter judgment for Format.

9